## UNITED STATES v. FARRIOR MOTOR CO. Inc.
### No. 13941.

United States Court of Appeals
Fifth Circuit.
June 30, 1952.

Jesse W. Shanks, Asst. U. S. Atty., Joseph E. Brown, U. S. Atty., Jackson, Miss. for appellant.

Claude Pittman, Francis T. Zachary, Hattiesburg, Miss., for appellee.

· Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

The United States brought this action under 18 U.S.C. § 3617, for the forfeiture

of one 1950 Buick Sedan and other property. Farrior Motor Company, Inc. filed its claim asserting a lien upon the automobile, and seeking a remission or mitigation of the forfeiture. After a hearing without a jury upon oral testimony and stipulated facts, the District Judge ordered that the automobile be forfeited but he allowed the Motor Company's claim for remission in the amount of $1,291.16. From this judgment, the United States appeals.

The material facts, as found by the District Court, are substantially as follows: The Buick Sedan was purchased by James Lee Edwards from claimant, Farrior Motor Co. Inc. Prior to the sale claimant's salesman and credit manager inquired at the office of the sheriff of Forrest County, Mississippi, where the sale was made and where the buyer then resided, and was informed by the chief deputy sheriff that Edwards had no record or reputation for dealing in nontax-paid liquor. Upon receipt of this information the sale was consummated; part of the purchase price was paid in cash and the balance was evidenced by a conditional sales contract. On that day or a few days thereafter claimant endorsed this contract to General Motors Acceptance Corporation, a finance company, with recourse on the Motor Company. About ninety days after the assignment of the contract General Motors Acceptance Corporation advised claimant that the car was being used in violation of the internal revenue laws. Whereupon, claimant's president asked his attorney whether he could seize the car or rescind the contract by reason of such information. The attorney advised claimant that it could not do so unless it could prove as a fact that the car was being used in violation of the laws of the United States or of the state relating to liquor. At a later date but only after the automobile had been seized by officers of the Alcohol Tax Unit for its use in transporting nontaxpaid whiskey, the finance company charged the papers off against the claimant's reserve account. The trial court specifically found that at the time of seizure claimant had an interest in the automobile which it acquired in good faith.

On the basis of these findings the trial court concluded as a matter of law that claimant's inquiry to the Chief Deputy Sheriff was equivalent to inquiry of the chief law enforcement officer of the county; that claimant had no power under the contract to repossess the car or rescind the contract after it had been sold to Edwards unless it could prove that the car was being used in violation of law; and that it was not in possession of sufficient facts to justify taking that action.

The government contends that the District Court did not have authority to remit or mitigate the forfeiture under section 3617(b), Title 18, for the reason that the claimant did not satisfy the three conditions precedent [1] to remission, viz.; (1) that the claimant had an interest in the Buick Sedan which he acquired in good faith; (2) that it had at no time any knowledge or reason to believe that the said automobile was being or would be used in the violation of the laws of the United States or of any state relating to liquor; and (3) "if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract * * * under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle" that the claimant prove, "that, before such claimant acquired his interest, * * * the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract * * *, of the locality in which

1. United States v. Federal Credit Co., 5 Cir., 117 F.2d 341; United States v. McArthur, 5 Cir., 117 F.2d 343; United States v. One 1941 Model Ford Coach, 5 Cir., 138 F.2d 506; Murdock Acceptance Corporation v. United States, 5 Cir., 172 F.2d 552; United States v. One 1950 Lincoln Sedan, 5 Cir., 196 F.2d 639.

such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

We think it plain from the evidence that the court was justified in finding that the claimant had met the minimum requirements of subsection (b)(1) and (3). Therefore, we need only determine whether claimant satisfied the second condition precedent to remission or mitigation of forfeiture by proving that it had at no time any knowledge or reason to believe that the automobile was being or would be used in violation of laws of the United States or of the state relating to liquor.

Section 3617 is a remedial measure, enacted in recognition of the fact that in many instances the drastic remedy of forfeiture may be unjust, and is intended to afford relief to innocent parties where their claims are just and reasonable. In discussing this fundamental purpose of the statute [2] in the light of its legislative history, the Supreme Court in United States v. One 1936 Ford V-8 De Luxe Coach, 307 U.S. 219, at page 236, 59 S.Ct. 861, at page 869, 83 L.Ed. 1249 said: "These facts indicate that Congress intended a reasonable inquiry concerning the bootleg risk should be made in connection with the investigation of financial responsibility. They negative the notion that a wholly innocent claimant at his peril must show inquiry concerning something unknown and of which he had no suspicion. * * * The forfeiture acts are exceedingly drastic. They were intended for protection of the revenues, not to punish without fault. It would require unclouded language to compel the conclusion that Congress abandoned the equitable policy, observed for a very long time, of relieving those who act in good faith and without negligence, and adopted an oppressive amendment not demanded by the tax officials or pointed out in the reports of its committees." Moreover, in order to carry out this

legislative purpose, the section is to be liberally construed by the courts.

We are mindful of the fact that we must not, under the guise of interpretation, add to or vary the plain terms of a legislative enactment. However, since subsection (b)(2) does not tie in the words "at no time" to any specific event or circumstance, we must do so. The government insists that claimant could not possibly satisfy the requirement of this subsection because it had knowledge or reason to believe that the automobile was being used or would be used in violation of the liquor laws. Therefore, since it could hardly be contended that the phrase means at no time prior to the forfeiture proceedings, which would result in denying all remissions or mitigations, we assume that the government contends that the words mean at no time prior to the seizure. The objection to such a literal interpretation of the provision is that it would result in the forfeiture of the property of an innocent party, who was powerless to prevent the illegal use after he learned of the buyer's activities. Such an interpretation would not square with the legislative purpose in enacting the statute. Nor can it be said that the government's interpretation could only result in injustice to a lienor who was unable to repossess the vehicle or rescind the contract; it could also result in punishing without fault the owner of an automobile. On the other hand, the claimant seemingly takes the position that the phrase, "at no time," means that at no time prior to the acquisition of an interest in the vehicle in good faith, as owner or otherwise, did it have knowledge or reason to believe that it was being or would be used in violation of the laws relating to liquor. However just and consistent with the legislative purpose the result of such an interpretation might be in the instant case, when applied to an owner of a vehicle whose good faith turned bad after he acquired his interest, claimant's interpretation would utterly defeat the forfeiture statutes. We think that neither party is right. It seems to us that the provision was intended to

2.   Section 3617, Title 18 U.S.C. was then section 40a, Title 27, United States Code.

protect a claimant who at no time, when by the exercise of diligence and good faith he could have done something about it, had any knowledge or reason to believe that the automobile was being or would be used in the violation of the laws relating to liquor.

 Our view is in accord with the only case in point which research has disclosed. In that case, United States v. One 1940 Mercury Coach Automobile, D.C. 43 F. Supp. 515, 517–518, the court said:

"There was no action which the Finance Company could have taken to repossess the car. It had not been negligent in making the loan. It acquired its interest in good faith. It made the inquiries required by the statute. Unless it failed to do something which it could have done, or unless it acted in bad faith or negligently it would be most oppressive, and contrary to the evident purpose and intent of the statute to forfeit its interest in the car."

Accordingly, we conclude that the court was empowered to remit the forfeiture and its judgment is affirmed.